NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TELEBRANDS CORP., <br><br> Plaintiff, <br> v. <br><br> NEWMETRO DESIGN, LLC, <br><br> Defendant. | **OPINION** <br> Cv. No. 16-1981 (WHW-CLW) |

**Walls, Senior District Judge**

      This matter involves a dispute over the ownership of intellectual property rights in two nearly identical microwave steam cleaning products. Plaintiff Telebrands Corp. ("Telebrands"), marketer of a product known as the "ANGRY MAMA," brings various federal and state law claims against Defendant-Counterclaimant NewMetro Design, LLC ("New Metro") for trademark, trade dress, and copyright infringement, unfair competition and fraud on the United States Patent and Trademark Office. New Metro, marketer of a product known as the "ANGRY-MAMA," brings various federal and state law counterclaims against Telebrands for trademark, trade dress, and copyright infringement and unfair competition, as well as a claim opposing Telebrands' federal trademark applications. Both parties also seek declaratory judgments of non-infringement for their own products. Plaintiff Telebrands now moves to dismiss several of New Metro's counterclaims. Decided without oral argument, Fed. R. Civ. P. 78, Telebrands' motion to dismiss is granted in part and denied in part.

## FACTUAL AND PROCEDURAL HISTORY

### I. The Parties, the products, and the intellectual property

Plaintiff Telebrands, a New Jersey corporation with its principal place of business in Fairfield, New Jersey, is a direct marketing company that markets and sells a microwave steam cleaning product known as the ANGRY MAMA. Defendant-Counterclaimant New Metro, a Pennsylvania limited liability company with its principal place of business in Duncansville, Pennsylvania, markets and sells a nearly identical microwave steam cleaning product known as the "ANGRY-MAMA." Both products consist of a plastic microwaveable device that is filled with water and vinegar and heated in the microwave. Upon being microwaved, the product emits steam that loosens stains and allows for easier microwave cleaning.

The two products are essentially identical. *See* ECF No. 1 ¶ 11 (description and photograph of ANGRY MAMA product); ECF No. 13 ¶ 7 (description and photograph of ANGRY-MAMA product). Both products resemble an "angry woman," with a blue, roughly-cylindrical body styled to resemble a floral-printed dress accessorized with a pearl necklace; arms held akimbo; a scowling face; and a circular red hair style with holes on top for steam to escape.[1] *See* ECF No. 1 ¶ 11 (describing appearance as the Telebrands product trade dress); ECF No. 13 ¶ 7. The ANGRY MAMA and ANGRY-MAMA were initially developed and

---

[1] The photographs the Parties provides of their own products are identical. Telebrands also provides a photograph of a slightly different ANGRY-MAMA product, allegedly marketed by New Metro, in which the flowers on the blue body are replaced with a raised Steam Design. *See* ECF No. 1 ¶ 26 (describing product as "almost identical" to Telebrands' ANGRY MAMA product).

2

manufactured as a single product by the Hong Kong-based company Daka Research, Inc. ("Daka"), which is not a party to this action. ECF No. 1 ¶ 9; ECF No. 13 ¶ 23.

Telebrands and New Metro agree about several basic facts regarding Daka and the history of the ANGRY MAMA/ANGRY-MAMA product: (a) Daka developed the product, at least in part, in 2014; (b) Daka initially manufactured the product for New Metro to sell in the United States; (c) Daka eventually began manufacturing the product for Telebrands to sell in the United States; (d) Telebrands informed New Metro that it no longer had permission to sell the product in the United States because Telebrands had exclusive rights to the product; and (e) New Metro continued to sell the product.

The parties hotly contest the remaining facts. Telebrands claims that, in November 2015, it received an "exclusive license" from Daka to market the ANGRY MAMA product in the United States. ECF No. 1 ¶ 9. Telebrands also claims it is the "owner by assignment of all right, title and interest in and to the common law trademarks relating to the ANGRY MAMA product," including the word mark "ANGRY MAMA," and any design mark relating to the product, along with all right, title and interest in and to the product trade dress. *Id.* ¶ 14. On March 17, 2016, Telebrands received U.S. Copyright Registration No. VA 1-995-574, which protects the "distinctive sculptural design of the ANGRY MAMA product." *Id.* ¶¶ 19–20; *see also* Certificate of Registration, ECF No. 1 Ex. A.

In its answer and counterclaims, New Metro states that it began marketing ANGRY-MAMA products in the United States on or about March 23, 2015, several months before Telebrands began marketing its ANGRY MAMA products. ECF No. 13 ¶¶ 8, 24, 37–38. New Metro allegedly sold its first ANGRY-MAMA products to U.S. customers in April 2015. *Id.* ¶ 9. New Metro claims that after May 2015, Telebrands became aware of the ANGRY-MAMA'S success

and began marketing and selling their "infringing product." *Id.* ¶¶ 37–38. New Metro received U.S. Copyright Registration No. VA 2-001-024 for the "Steam Design"[2] featured on the ANGRY-MAMA packaging on April 22, 2016. *Id.* ¶ 21; *see also Id.* Ex. A. (Certificate of Registration).

The parties also accuse each other of committing various frauds during the copyright and trademark application process. Telebrands alleges that New Metro "fraudulently applied to register in its own name" the trademarks "ANGRY MAMA" and the Steam Design with the United States Patent and Trademark Office. ECF No. 1 ¶ 24. Telebrands claims that New Metro knowingly submitted false declarations to the U.S. Patent and Trademark Office that New Metro was entitled to use the marks in commerce and that no other persons had the right to use the marks in commerce. *Id.* ¶ 25.

New Metro alleges that Telebrands has made fraudulent statements to various government agencies regarding its ownership of the rights to ANGRY-MAMA/ANGRY MAMA products. ECF No. 13 ¶¶ 48–54. New Metro also claims that after Telebrands became aware that New Metro had begun marketing ANGRY-MAMA products in commerce, Telebrands fraudulently changed the "first use" dates in the trademark application underlying their alleged trademark rights in ANGRY MAMA. *Id.* ¶¶ 51–52. Finally, New Metro claims Telebrands

---

[2] The Steam Design is a logo featured on ANGRY-MAMA packaging that consists of the word "ANGRY-mama," with "ANGRY" written in uppercase font, "mama" written in lowercase font, and a simple, graphical representation of a cloud of steam rising from the "A" in "ANGRY." ECF No. 13 ¶¶ 12–13 (picture of "Steam Design")

4

fraudulently stated in its application for U.S. Copyright Registration No. VA 1-995-574 that the design was created as "work made for hire" for Telebrands. *Id.* ¶¶ 155–58.

## II. The complaint and counterclaims

On April 8, 2016, Telebrands filed an eleven-count complaint against New Metro in this Court. ECF No. 1. Telebrands charges New Metro with trademark, trade dress, and unfair competition violations under the Lanham Act and New Jersey law, copyright infringement under the Copyright Act of 1976, misappropriation of Telebrands' intellectual property and fraud on the United States Patent and Trademark office in violation of New Jersey common law. *Id.* ¶¶ 44–93. Telebrands also seeks various declaratory judgments of non-infringement under the Lanham and Copyright acts. *Id.* ¶¶ 94–111.

On May 18, 2016, Defendant-Counterclaimant New Metro filed an answer denying Plaintiff's claims and asserting twelve counterclaims against Telebrands, many of which are identical to Telebrands' claims under the Lanham, Copyright acts and New Jersey law. ECF No. 13. New Metro claims that Telebrands' products, packaging, advertisements, and Steam Design are all similar to those used by New Metro, ECF No. 13 ¶¶ 37–45, and that Telebrands' marketing of its products has and will cause confusion among consumers and injure the "valuable reputation and goodwill" of New Metro. *Id.* ¶ 43. New Metro also alleges that, on at least one occasion, "Telebrands contacted a customer of New Metro and attempted to interfere with New Metro's attempts to sell ANGRY MAMA Products to the customer." *Id.* ¶ 46.

## III. Telebrands' motion to dismiss New Metro's counterclaims

On June 22, 2016, Plaintiff Telebrands filed a motion to dismiss Counts Three, Eleven, and Twelve of New Metro's counterclaims for failure to state a claim and lack of subject matter jurisdiction. ECF No. 44. Telebrands argues that Count Three, which charges Telebrands with

infringing New Metro's Copyright Registration No. VA 2-001-024, must be dismissed because the allegedly infringing work is not "substantially similar" and because the allegedly protected Steam Design is not copyrightable as a matter of law, *id.* at 5–9; that Count Eleven, which seeks an order opposing Telebrands' pending trademark applications, must be dismissed because the Court lacks subject matter jurisdiction, *id.* at 9–10, and that Count Twelve, which seeks an order canceling Telebrands' Copyright Registration No. VA 1-995-574, must be dismissed because the Court lacks authority to issue such an order. *Id.* at 10–11.

New Metro filed a brief on June 30, 2016 consenting to the dismissal of Count Eleven but opposing the dismissal of Counts Three and Twelve. ECF No. 53. Telebrands filed a brief in further support of its motion to dismiss on July 12, 2016. ECF No. 60. The Court now considers Telebrands' motion to dismiss Counts Three and Twelve of New Metro's counterclaims.

## STANDARD OF REVIEW

### I. Motion to dismiss for failure to state a claim

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a party to move to dismiss a pleading for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted).

In considering the plaintiff's claims, the Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 at 299 (3d ed. 2014). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).[3]

A court may also consider and take judicial notice of matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Such matters of public record may include earlier judicial proceedings, *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009), filings with the SEC, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014), and other documents deemed to be public records by law, *Del. Nation v. Pennsylvania*, 446 F.3d 410, 414 n.6 (3d Cir. 2006).

If a complaint fails to state a claim upon which relief can be granted, a plaintiff should ordinarily be granted the right to amend its complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

---

[3] "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Mele*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

## DISCUSSION

Telebrands argues that Count Three of New Metro's counterclaims, which charges Telebrands with copyright infringement, and Count Twelve, which seeks an order canceling Telebrands' own copyright registration, must be dismissed for failure to state a claim; and that Count Eleven, which seeks an order denying registration of Application Serial Number 86/753,767 with the U.S. Patent and Trademark Office and enjoining Telebrands from registering any other ANGRY MAMA trademarks, should be dismissed for lack of subject matter jurisdiction. ECF No. 44. To repeat, New Metro consents to the dismissal of Count Eleven. *See* ECF No. 53 at 8. The Court denies Telebrands' motion to dismiss Count Three and grants its motion to dismiss Count Twelve.

### A. Count Three adequately states a claim for copyright infringement

In Count Three of its counterclaims, New Metro charges Telebrands with infringing its rights to Copyright Registration No. VA 2-001-024, which protects New Metro's "ANGRY-MAMA Product Packaging," *see* ECF No. 13 Ex. A, by "manufacturing, importing, displaying, distributing, selling, offering for sale, promoting and advertising" ANGRY MAMA products in "product packaging that is substantially similar or identical to New Metro's copyright-protected packaging" and/or that displays a logo that is substantially similar or identical to the Steam Design. ECF No. 13 ¶¶ 73–77. Telebrands argues that New Metro fails to allege its own packaging is similar to New Metro's and that the Steam Design is ineligible for copyright protection as a matter of law.

#### 1. Applicable Law

To establish a *prima facie* case for copyright infringement under 17 U.S.C. § 501, a plaintiff must show (1) ownership of a valid copyright, and (2) unauthorized copying of original

elements of the plaintiff's work. *Dun & Bradstreet Software Serves. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Protection under the Copyright Act of 1976 "subsists . . . in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. To qualify for copyright protection a work must be "original to the author," meaning that it "was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991). "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." *Id.* Although "a 'copyright,' as a right, vests immediately upon the creation of the work" and "must not be confused with the act of registering that right," *Brownstein v. Lindsay*, 742 F.3d 55, 66 (3d Cir. 2014), registration with the United States Copyright Office is a "precondition to filing a claim" for copyright infringement under the Copyright Act. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410.

2. Analysis

New Metro pleads the first prong of a *prima facie* case for copyright infringement by showing that it owns a valid, federally registered copyright in the packaging of its ANGRY-MAMA product. *See* ECF No. 13 Ex. A.

Telebrands argues that the copyright is invalid, at least with respect to the Steam Design on the packaging, because the Design is "comprised entirely of . . . uncopyrightable content." ECF No. 44 at 7. According to Telebrands, the United States Copyright Office typically refuses to register logos that consist of only "[w]ording . . . [m]ere scripting or lettering, either with or

without uncopyrightable ornamentation. . . . [m]ere spatial placement or format of trademark, logo, or label elements. . . [u]ncopyrightable use of color [and] [m]ere use of different fonts." *Id.* (quoting *Compendium of U.S. Copyright Office Practices*, at § 913.1, Third Edition (Dec. 22, 2014) ("Compendium"), available at http://www.copyright.gov/comp3/docs/compendium.pdf). Also unprotected are "familiar symbols and designs," including "[s]ymbols typically found on a keyboard." *Id.* (citing 37 C.F.R. § 202.1(a)). Telebrands claims that the Steam Design is not eligible for copyright protection because it consists of "mere lettering" accompanied by an image of a "steam cloud," which it claims is a "familiar symbol[ ] and design[ ]." *Id.* Telebrands creatively argues that the steam cloud is unprotected because it consists of three straight lines, which can be reproduced using the "\" "|" and "/" symbols on a keyboard, and a "simple cloud," which is similar to a star (listed as an uncopyrightable symbol in Compendium, § 313.4(J)), because it is a "natural object in the sky." *Id.* at 8.

The unexplained significance of celestial objects aside, this Court is not convinced by Telebrands' reasoning. As an initial matter, the Court repeats that New Metro's copyright registration is *prima facie* evidence of the validity of the copyright protection. 17 U.S.C. § 410. Additionally, several Courts of Appeals, including the Third Circuit, have held that works composed of "common elements" that are rearranged, changed, and combined are "sufficiently original under copyright law." *Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x 228, 234 (3d Cir. 2010) (citing *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764-65 (2d Cir. 1991)); *see also Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 356 (4th Cir. 2000) (holding that a drawing containing "several public domain elements which are not protectable" was protectable as a whole because the elements "were selected, coordinated, and arranged in such a way as to render the work original."). That individual components of the Steam Design may be

ineligible for copyright protection does not render the Design as a whole ineligible. Similarly, even if the Steam Design were ineligible for copyright protection, this would not necessarily render the product packaging as a whole ineligible. Telebrands does not overcome the presumption that New Metro owns a valid, protected copyright interest in the Steam Design and the product packaging.

Telebrands also argues that New Metro fails to establish the second prong of its copyright infringement claim because the allegation that Telebrands' "product packaging . . . is substantially similar or identical to New Metro's copyright protected packaging," *see* ECF No. 13 ¶ 75, is a legal conclusion without any factual support. ECF No. 44 at 5–6. This is incorrect. First, New Metro specifically alleges that Telebrands "included the exact same 'Steam' logo on its packaging" that New Metro does. ECF No. 13 ¶ 38. Although is true that New Metro does not list any other specific similarities between the Parties' packaging in its counterclaims,[4] New Metro does include side-by-side photographs of the two companies' packages to illustrate the claim that Telebrands' "product packaging . . . is substantially similar or identical to New Metro's product packaging." *Id.* With these photographs directly embedded in the counterclaims, New Metro's allegations rise above the level of mere "labels and conclusions or a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, to state a plausible claim for relief.

## B. The Court cannot order cancellation of a copyright registration, as sought in Count Twelve

---

[4] In its opposition to Telebrands' motion to dismiss, New Metro lists several additional supposed similarities. *See* ECF No. 51 at 4. The Court will consider only allegations in the pleadings or incorporated documents on a motion to dismiss. *See Sentinel Trust Co.*, 316 F.3d at 216.

In Count Twelve of its counterclaims, New Metro alleges that Telebrands engaged in fraud in its registration of Copyright Registration No. VA 1-995-574, which protects the design of the ANGRY MAMA product, by falsely stating that the work is a "sculpture" and a "work made for hire" for Telebrands in 2014. ECF No. 13 ¶¶ 141–65. New Metro seeks "an order directing Telebrands to cancel U.S. Copyright Registration No. VA 1-995-574." *Id.* ¶ 165.

In its motion to dismiss, Telebrands does not challenge New Metro's allegation that the copyright is "invalid and unenforceable against New Metro." *Id.* ¶ 163. Instead, Telebrands challenges the remedy New Metro seeks, arguing – correctly – that copyrights and copyright registrations are distinct and that this Court has no authority to cancel registrations with the U.S. Copyright Office. ECF No. 44 at 10 (citing *Brownstein v. Lindsay*, 742 F.3d 55, 75–77 (3d Cir. 2014) (holding that, while courts may invalidate underlying copyrights, the Copyright Act gives federal courts no authority to cancel copyright registrations with the U.S. Copyright Office)); *see also Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781–82 (9th Cir. 2002) (In case challenging "the validity of the registration, not the copyright," referring complaint seeking declaratory judgment that copyright registration was invalid to the U.S. Copyright Office under the doctrine of primary jurisdiction because "[c]ancellation is an action taken by the Copyright Office," not the courts) (citing 37 C.F.R. § 201.7(a)); *Innovation Ventures, L.L.C. v. Aspen Fitness Products, Inc.*, No. 11-CV-13537, 2015 WL 11071470, at *21 (E.D. Mich. Mar. 31, 2015) (dismissing claim seeking cancellation of allegedly fraudulently obtained copyright registration for lack of jurisdiction because "[t]he Register or [sic] Copyrights is vested with the exclusive and comprehensive authority to set regulations consistent with the Copyright statutes." (citing *Brownstein*, 742 F.3d at 75; *Syntek Semiconductor*, 307 F.3d at 781–82).

New Metro responds that Count Twelve does not seek an order directing the *Copyright Office* to cancel Registration No. VA 1-995-574, but rather an order directing *Telebrands* to cancel the copyright "using the cancellation procedure required by the U.S. Copyright Office." ECF No. 53 at 7 (quoting ECF No. 13 ¶ 44). New Metro refers to a treatise on copyright law stating that "when a court is convinced that a registration should be canceled, it should hold the registration invalid, and order the holder of the certificate to request the Copyright Office to cancel the registration." *Id.* (quoting 5 William Patry, *Patry on Copyright* § 17:108 (2016)). New Metro does not refer to any statutory or judicial authority authorizing the Court to issue such an order.

To repeat, this Court's inability to compel the cancellation of Copyright Registration No. VA 1-995-574 does not mean the underlying copyright is valid, nor does it mean New Metro may not seek to cancel the copyright registration through other avenues. New Metro may incorporate its allegations that Telebrands committed fraud on the U.S. Copyright Office into Count Ten of the counterclaims, which seeks a declaratory judgment that New Metro is not infringing any of Telebrands' copyrights, *see* ECF No. 13 ¶¶ 112–17, as well as into its defense to Telebrands' own claims of copyright infringement. *See, e.g., Vaad L'Hafotzas Sichos v. Krinsky*, 133 F. Supp. 3d 527, 537 (E.D.N.Y. 2015) (holding that fraud on the Copyright Office is not an affirmative cause of action, but that it is "recognized as one of the various ways in which a registered copyright can be challenged as a defense to infringement). New Metro may also "pursue its dispute regarding registration through the Copyright Office." *App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 331 (D.D.C. 2015) (citing *Brownstein*, 742 F.3d at 75–77). This Court, however, cannot grant New Metro the relief it seeks in Count Twelve. Because this Court does not have authority to order the U.S. Copyright Office to cancel the registration of Copyright

Registration No. VA 1-995-574 or to order Telebrands to cancel the registration, it must dismiss Count Twelve for failure to state a claim upon which relief can be granted.

### C. New Metro consents to the dismissal of Count Eleven

As discussed, New Metro agrees to dismiss Count Eleven of its counterclaims. ECF No. 53 at 8. The Court dismisses Count Eleven without prejudice.

## CONCLUSION

Plaintiff Telebrands' motion to dismiss Counts Three, Eleven, and Twelve of Defendant-Counterclaimant New Metro's counterclaims is granted in part and denied in part. Counts Eleven and Twelve of the counterclaims are dismissed without prejudice. An appropriate order follows.

DATE: 4 October 2016

William H. Walls
Senior United States District Court Judge