NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

TELEBRANDS CORP.,

                        Plaintiff,

            v.

NEWMETRO DESIGN, LLC,

                        Defendant.

**OPINION**

Cv. No. 16-1981 (WHW-CLW)

**Walls, Senior District Judge**

This is a dispute over the ownership of intellectual property rights in two, practically identical microwave steam cleaning products. Plaintiff Telebrands Corp. ("Telebrands"), marketer of a product known as the "ANGRY MAMA," brings various federal and state law claims against Defendant-Counterclaimant NewMetro Design, LLC ("New Metro") for trademark, trade dress, and copyright infringement; unfair competition; and fraud on the United States Patent and Trademark Office. New Metro, marketer of a product known as the "ANGRY-MAMA," brings various federal and state law counterclaims against Telebrands for trademark, trade dress, and copyright infringement and unfair competition, as well as a claim opposing Telebrands' federal trademark applications. Both parties also seek declaratory judgments of non-infringement for their own products.

Plaintiff Telebrands seeks a preliminary injunction under Fed. R. Civ. P. 65(a) enjoining New Metro from infringing Telebrands' copyrights and trademarks and engaging in unfair competition. New Metro seeks a preliminary injunction enjoining Telebrands from infringing

NOT FOR PUBLICATION

New Metro's copyrights and trademarks and engaging in unfair competition. The Court held oral

argument on October 25, 2016. Both Parties' motions for preliminary injunction are denied.

## FACTUAL AND PROCEDURAL HISTORY

### I.   The Parties and the ANGRY MAMA/ANGRY-MAMA products

Plaintiff Telebrands, a New Jersey corporation with its principal place of business in

Fairfield, New Jersey, is a direct marketing company that markets and sells "a wide variety of

consumer products" through direct response advertising, catalogue, mail order, internet sales,

and national retail stores. Complaint, ECF No. 1 ¶¶ 2, 8. Telebrands markets and sells a

microwave steam cleaning product known as the ANGRY MAMA, described by Telebrands as a

"microwaveable character that is filled with water and vinegar to make cleaning the microwave

easier." *Id.* ¶ 9. Upon being microwaved, the product emits steam that "softens stains and

particles in the microwave to make microwave cleaning easier." *Id.*

Defendant-Counterclaimant New Metro, a Pennsylvania limited liability company with

its principal place of business in Duncansville, Pennsylvania, markets and sells a microwave

steam cleaning product known as the "ANGRY-MAMA," described by New Metro as a "plastic

microwaveable device that is filled with water and vinegar and heated in the microwave." Def.

Answer and Counterclaims, ECF No. 13 ¶¶ 1, 7.[1] Upon being microwaved, the product emits

steam that "softens particles and allows for easier cleaning of the microwave." *Id.*

The two products are essentially identical. *See* ECF No. 1 ¶ 11 (description and

photograph of ANGRY MAMA product); ECF No. 13 ¶ 7 (description and photograph of

ANGRY-MAMA product). As both Parties claim, the products resemble an "angry woman,"

---

[1] New Metro numbers the paragraphs of the Answer, Affirmative Defenses, and Counterclaims
sections of its Answer and Counterclaims filing separately. ECF No. 13. Unless otherwise noted,
all citations are to the Counterclaims section.

NOT FOR PUBLICATION

with a blue,[2] roughly cylindrical body styled to resemble a floral-printed dress accessorized with a pearl necklace; arms held akimbo; a scowling face; and a circular red hair style with holes on top for steam to escape.[3] *See* ECF No. 1 ¶ 11 (describing appearance as the Telebrands product trade dress); ECF No. 13 ¶ 7.

The ANGRY MAMA and ANGRY-MAMA were initially developed and manufactured as a single product by the Hong Kong-based company Daka Research, Inc. ("Daka"), which is not a party in this action. ECF No. 1 ¶ 9; ECF No. 13 ¶ 23. Telebrands and New Metro agree about several basic facts regarding Daka and the history of the ANGRY MAMA/ANGRY-MAMA product: (a) Daka developed the product, at least in part, in 2014; (b) Daka initially manufactured the product for New Metro to sell in the United States; (c) Daka eventually began manufacturing the product for Telebrands to sell in the United States; (d) Daka informed New Metro that it no longer had permission to sell the product in the United States because Telebrands had exclusive rights to the product; and (e) New Metro continued to sell the product.

The remaining facts, including when and whether Daka marketed the product in the United States on its own, whether Daka ever held United States intellectual property rights in the product, and whether Daka assigned or licensed these rights to either Party, are highly disputed.

---

[2] The Parties focus on a single shared color scheme, although both parties provide photographs of products in other colors. *See*, e.g., ECF No. 22-2 Ex. B; ECF No. 30 Ex. D.

[3] The photographs the Parties provides of their own products are identical. Telebrands also provides a photograph of a slightly different ANGRY-MAMA product, allegedly marketed by New Metro, in which the flowers on the blue body are replaced with a raised Steam Design. *See* ECF No. 1 ¶ 26 (describing product as "almost identical" to Telebrands' ANGRY MAMA product).

NOT FOR PUBLICATION

**II. Daka's development and alleged marketing of the ANGRY MAMA/ANGRY-MAMA product**

According to Telebrands, Daka developed and created the ANGRY MAMA product "[a]t least as early as 2014." ECF No. 1 ¶ 9. Telebrands alleges that, in September 2014, Daka began marketing and offering the product for sale to customers in the United States, including Defendant-Counterclaimant New Metro. *Id.* ¶ 10. As example, on September 22, 2014, Daka allegedly uploaded a video advertising the product to Youtube. Reply Decl. Jesse Chow in Supp. P. Mot. Prelim. Injunction ("Chow Declaration 2"), ECF No. 30 ¶ 4; *see also* ECF No. 30 Ex. B (undated screenshot of "Angry Mama" video, with 3,459 views and note "Uploaded on Sep 22, 2014"). At least as early as February 2015, Telebrands claims that Daka began using the word mark "ANGRY MAMA" on its website in connection with the product. ECF No. 1 ¶ 14.

On October 16 or 17, 2014, according to Telebrands, an "agent" of New Metro met with Daka in Hong Kong and learned about the ANGRY MAMA product. Daka allegedly provided New Metro's agent with samples of the product and marketing materials featuring the trademarks and product trade dress. ECF No. 1 ¶ 1; Decl. Jesse Chow in Supp. P. Mot. Prelim. Injunction ("Chow Declaration 1"), ECF No. 12-3 ¶ 6. New Metro disputes this account of events and claims that the "agent" who met with Daka in Hong Kong in 2014, Howard Locker, was actually a sales agent working on commission for Daka, not a representative of New Metro. ECF No. 22 at 19; Decl. Howard Locker in Supp. Def. Opp. Mot. P. Injunction ("Locker Declaration"), ECF No. 22-4. New Metro further claims that Locker did not receive marketing materials or product samples at the meeting. ECF No. 22 at 19; ECF No. 22-4 ¶ 5.

In March 2015, Daka operated a booth at the International Housewares Show in Chicago, Illinois. At this trade show, Telebrands claims that Daka distributed ANGRY MAMA products

4

NOT FOR PUBLICATION

and marketing materials featuring the product trade dress and trademarks to consumers,

including representatives from New Metro. *Id*. ¶¶ 18, 22; ECF No. 12-3 ¶ 8. New Metro claims,

however, that the International Housewares Show was not open to the consumer public, ECF No.

22 at 15-16; that Jesse Chow, the Business Development Director of Daka, distributed no

marketing materials and displayed only a single prototype of the product, which was "obscured

among his other numerous products on display," *id.* at 16; Decl. Gary Fallowes in Supp. Def.

Opp. Mot. P. Injunction ("Fallowes Declaration"); ECF No. 22-2 ¶¶ 14-17; and that New Metro

was the only company at the International Housewares Show to "notice" the prototype of the

ANGRY MAMA product. ECF No. 22 at 16; ECF No. 22-2 ¶ 16.

### III. New Metro's purchase, marketing, and sale of the ANGRY-MAMA product

The Parties agree that, soon after the International Housewares Show, New Metro

contacted Daka and placed an order for the manufacture of ANGRY-MAMA products. ECF No.

1 ¶ 23; ECF No. 22-2 ¶¶ 8, 18. New Metro claims that it ordered the products to its "own

manufacturing specifications," ECF No. 22-2 ¶¶ 8, 18, and alleges that it designed (a) the

product's blue and red color scheme, (b) the packaging, and (c) the "Steam Design," a logo

featured on ANGRY-MAMA packaging that consists of the word "ANGRY-mama," with

"ANGRY" written in uppercase font, "mama" written in lowercase font, and a simple, graphical

representation of a cloud of steam rising from the "A" in "ANGRY." *Id.* ¶¶ 8-10; ECF No. 13 ¶

12-13 (picture of "Steam Design"); *see also* ECF No. 22-2 Ex. D (NewMetro Design, LLC

document dated March 27, 2015 featuring Steam Design, mock-ups of three color variations of

ANGRY-MAMA product, and Pantone color specifications); ECF No. 22-2 Ex. E (May 5-14,

2015 email chain between Howard Locker, Jesse Chow, and Gary Fallowes, the owner and

founder of New Metro, discussing coloration and materials of ANGRY-MAMA product). New

NOT FOR PUBLICATION

Metro received U.S. Copyright Registration No. VA 2-001-024 for the Steam Design on April

22, 2016. ECF No. 22-2 ¶ 11; *see also* ECF No. 22-2 Ex. F. (Certificate of Registration). The

ANGRY-MAMA packaging that New Metro allegedly designed bears the name "NewMetro"

but not the name "Daka." ECF No. 22-2 ¶ 12.

New Metro states that it began marketing ANGRY-MAMA products in the United States

on or about March 23, 2015, after the International Housewares Show but several months before

Telebrands began marketing its ANGRY MAMA products. ECF No. 13 ¶¶ 8, 24, 37-38; *see also*

ECF No. 22-2 Ex. A (March 24-26, 2015 emails from New Metro manager Bob Trinque to

redacted recipients advertising ANGRY-MAMA products). New Metro allegedly sold its first

ANGRY-MAMA products to U.S. customers in April 2015. ECF No. 13 ¶ 9; *see also* ECF No.

22-2 Ex. C (April 1-June 18, 2015 invoices for ANGRY-MAMA products).

New Metro claims that it was the first U.S. company to which Daka sold ANGRY

MAMA/ANGRY-MAMA products, that Daka "actively encouraged" New Metro to sell

ANGRY-MAMA products in the United States, ECF No. 13 ¶¶ 32-33; ECF No. 22-2 ¶ 20, and

that Daka did not sell the products to any other U.S. company until April 2015. ECF No. 13 ¶ 32.

New Metro claims that, by May 11, 2015, five additional U.S. companies, not including

Telebrands, had expressed "interest" to Daka in ANGRY-MAMA products, and that Daka

eventually began manufacturing the products for companies other than New Metro. ECF No. 22

at 5. In response to a complaint from New Metro about these other companies, Daka allegedly

promised to grant New Metro "exclusive" North American rights to sell the ANGRY-MAMA

product. ECF No. 22-2 ¶ 22; ECF No. 22-2 Ex. G (June 5, 2015 email from Howard Locker to

Jesse Chow suggesting, "regarding the development of new Angry Mama items," that "New

Metro has exclusive rights to North America, US & Canada;" and June 7, 2015 email from Jesse

6

NOT FOR PUBLICATION

Chow to Howard Locker stating that "we do agreed with" the exclusivity); *see also* ECF No. 22-2 Ex. I at 2 (January 6, 2016 email from Gary Fallowes to Jesse Chow stating that "[m]y business partner is very upset that we never received any kind of exclusive agreement, after you promised for months to give it to New Metro.").

New Metro also claims that, in a June 2015 videoconference, Daka encouraged the company to register the ANGRY-MAMA trademarks in the United States. ECF NO. 22-2 ¶ 23; ECF No. 22-4 ¶ 8; *see also* ECF No. 22-2 Ex. H (June 15, 2015 email from Howard Locker to Robert Trinque, with subject line "Skype with Jesse," stating that "Jesse said okay for New Metro to proceed with registering Angry Mama."). Telebrands disputes this, claiming that New Metro sought permission from Daka to register the ANGRY MAMA mark in the United States in May 2015, but that Daka denied the request. ECF No. 12-3 ¶ 8. Then, "without the authorization or consent" of Daka, New Metro allegedly "fraudulently applied to register in its own name" the trademarks "ANGRY MAMA" and the Steam Design (Serial Nos. 86/911,026; 86/921,783; and 76/718,477, collectively the "Registered Trademarks") with the United States Patent and Trademark Office. ECF No. 1 ¶ 24 (including reproduction of the Steam Design). In connection with the applications, Telebrands claims that New Metro knowingly submitted false declarations to the U.S. Patent and Trademark Office that (a) New Metro was entitled to use the marks in commerce, (b) no other persons had the right to use the marks in commerce. The U.S. Patent and Trademark Office allegedly relied on these misrepresentations in granting New Metro's applications. *Id*. ¶¶ 25.

### IV. Telebrands' purchase, marketing, and sale of the ANGRY MAMA product

"[S]ometime late in 2015," New Metro alleges that Daka began selling ANGRY MAMA products to Telebrands, and that Telebrands began selling its ANGRY MAMA products to U.S.

NOT FOR PUBLICATION

consumers in November 2015. ECF No. 22-2 ¶¶ 24, 27. Telebrands claims that, in November 2015, it received an "exclusive license" from Daka to market the ANGRY MAMA product in the United States. *Id*. ¶ 9; ECF No. 12-3 ¶ 12. Telebrands also claims it is the "owner by assignment of all right, title and interest in and to the common law trademarks relating to the ANGRY MAMA product," including the word mark "ANGRY MAMA," and any design mark relating to the product, along with all right, title and interest in and to the product trade dress. *Id*. ¶ 14; *see also* ECF No. 12-3 ¶ 12. On March 17, 2016, Telebrands received U.S. Copyright Registration No. VA 1-995-574, which protects the "distinctive sculptural design of the ANGRY MAMA product." *Id*. ¶¶ 19-20; *see also* Certificate of Registration, ECF No. 1 Ex. A. Telebrands received Supplementary Registration VA 1-436-472 for this copyright effective June 9, 2016. ECF No. 79-1.

New Metro alleges that Telebrands has made fraudulent statements to various government agencies regarding its ownership of the rights to ANGRY-MAMA/ANGRY MAMA products. According to New Metro, Telebrands fraudulently stated in its application for U.S. Copyright Registration No. VA 1-995-574 that the design was created in 2014 as "work made for hire" for Telebrands, although Telebrands did not create the design itself or have a relationship with Daka in 2014. ECF No. 22 at 7-8. New Metro also claims that Novel Brands, a New Jersey LLC, filed U.S. Trademark Application Serial No. 86.753,767 for the mark "ANGRY MAMA" listing a "first use anywhere" date of September 1, 2015 and a "first use in commerce" date of September 4, 2015. ECF No. 13 ¶ 48. Novel Brands executed an assignment of its rights in Ser. No. 86.753,767 to Telebrands on January 13, 2016. *Id*. ¶ 50. On April 1, 2016, after New Metro informed Telebrands that New Metro had begun marketing ANGRY-MAMA products in commerce in March 2015, Telebrands allegedly changed its "first use" dates in the trademark

NOT FOR PUBLICATION

application to March 31, 2015, a date that New Metro claims is false. *Id.* ¶¶ 51-52. Finally, New Metro claims that in four applications Telebrands filed with the United States Patent and Trademark Office (Application Ser. No. 86/940,973 (Blue ANGRY MAMA design), 86/940,863 (Blue ANGRY MAMA "red face" design); 86/940,914 (Yellow ANGRY MAMA design); and 86/940,873 (ANGRY MAMA trade dress)), Telebrands (a) falsely declared that Telebrands was entitled to use the marks in commerce, (b) falsely declared that no other persons had the right to use the marks in commerce, and (c) did not disclose that New Metro holds prior rights in the trademarks and designs. *Id.* ¶ 54. The U.S. Patent and Trademark Office allegedly relied on these misrepresentations in granting Telebrands' applications. *Id.* ¶¶ 25.

### V.  The dispute over American sales of ANGRY MAMA/ANGRY-MAMA products

On January 6, 2016, Jesse Chow informed Gary Fallowes by email that Daka would no longer manufacture ANGRY-MAMA products for New Metro to sell in the United States. ECF No. 22-2 ¶ 25. Chow stated that Daka was "selling the whole Angrymama business to a 3rd party," and that, "[u]pon the deal finalized, our new buyer will reach" out to New Metro about purchasing ANGRY MAMA products directly from the buyer. *Id.*; ECF No. 22-2 Ex. I (January 6, 2016 email from Jesse Chow to Gary Fallowes with subject line "RE: Angry Mama / Situation"). That month, representatives of New Metro met with Bala Iyer, the Executive Vice President and Chief Operating Officer of Telebrands, who allegedly stated that Telebrands had "purchased" the exclusive rights to ANGRY-MAMA/ANGRY MAMA products from Daka and

NOT FOR PUBLICATION

offered to "allow" New Metro to sell ANGRY-MAMA products to certain accounts. ECF No. 22-2 ¶ 26. New Metro allegedly "declined, broke off discussions, and left the meeting." *Id.*[4]

On March 11, 2016, Telebrands sent a letter to New Metro demanding that the company discontinue advertisement and sale of its ANGRY-MAMA products and withdraw its federal trademark applications. *Id.* ¶ 37. On March 24, 2016, New Metro responded with a letter demanding that Telebrands "immediately cease and desist all use of New Metro's ANGRY-MAMA trademarks, trade dress, and copyright-protected 'steam' design." *Id.* ¶ 38.

## VI.      The complaint and counterclaims

On April 8, 2016, Plaintiff Telebrands filed an eleven-count complaint against New Metro in this Court. ECF No. 1. Telebrands claims that New Metro sells ANGRY-MAMA products that are essentially identical to Telebrands' ANGRY MAMA products through the same channels of trade as Telebrands, *id.* ¶¶ 26-29, along with cleaning wipes that feature elements of the ANGRY MAMA trademarks and trade dress. *Id.* ¶¶ 30-31. Telebrands claims that New Metro uses the ANGRY MAMA trademarks, trade dress, and copyrighted sculptural design in its products with the "intent and purpose of confusing, misleading and deceiving the public and unfairly capitalizing on Telebrands' initiative and valuable good will." *Id.* ¶ 33. Telebrands charges New Metro with (1) infringement of Telebrands' ANGRY MAMA trademarks by selling ANGRY-MAMA products and wipes in interstate commerce, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *id.* ¶¶ 44-49; (2) infringement of Telebrands' ANGRY MAMA trade dress in interstate commerce, in violation of Section 43(a) of the Lanham Act, *id.*

---

[4] Iyer has submitted a sworn declaration stating her belief that Daka no longer supplies ANGRY-MAMA products to New Metro, and that "the Infringing Product [currently] featured on NewMetro's website is not the same product it purchased from Daka." Decl. Bala Iyer in Supp. P. Mot. Prelim. Injunction ("Iyer Declaration"), ECF No. 12-2 ¶ 10.

NOT FOR PUBLICATION

¶¶ 50-55; (3) infringement of Telebrands' U.S. Copyright Registration No. VA 1-995-574, in

violation of Section 501 of the Copyright Act of 1976, 17 U.S.C. § 501, *id.* ¶¶ 56-60; (4) unfair

competition in interstate commerce, in violation of Section 43(a) of the Lanham Act, *id.* ¶¶ 61-

64; (5) misappropriation of Telebrands' intellectual property, in violation of New Jersey

common law, *id.* ¶¶ 65-71; (6) fraud on the United States Patent and Trademark office for

submitting knowingly false statements in connection with New Metro's trademark application, in

violation of New Jersey common law, *id.* ¶¶ 72-78; (7) unfair competition for using Telebrands'

ANGRY MAMA trademarks and/or trade dress, in violation of N.J.S.A. 56:4-1, *id.* ¶¶ 79-86; and

(8) trademark infringement and unfair competition, in violation of New Jersey common law. *Id.*

¶¶ 87-93. Telebrands also seeks (9) a declaratory judgment, under 15 U.S.C. § 1125 *et seq.*, that

Telebrands has not infringed and is not infringing any valid trademark owned by New Metro, *id.*

¶¶ 94-99; (10) a declaratory judgment, under 15 U.S.C. § 1125 *et seq.*, that Telebrands has not

infringed and is not infringing any trade dress owned by New Metro, *id.* ¶¶ 100-05; and (11) a

declaratory judgment, under 17 U.S.C. § 501, *et seq.*, that Telebrands has not infringed, and is

not infringing, any valid U.S. Copyright Registration held by New Metro. *Id.* ¶¶ 106-11. Among

other forms of relief, Telebrands seeks statutory, punitive, and treble actual damages and a

judgment permanently enjoining New Metro from selling ANGRY-MAMA products or any

products bearing the ANGRY-MAMA name, Steam Design, or trade dress *Id.* at 21-23.

On May 18, 2016, Defendant-Counterclaimant New Metro filed an answer with the Court

denying Plaintiff's claims and asserting twelve counterclaims against Telebrands, many of which

are identical to Telebrands' claims. ECF No. 13. New Metro claims that Telebrands' products,

packaging, advertisements, and Steam Design are all similar to those used by New Metro, ECF

No. 13 ¶¶ 37-45, and that Telebrands's marketing of its products has and will cause confusion

11

NOT FOR PUBLICATION

among consumers and injure the "valuable reputation and goodwill" of New Metro. *Id.* New

Metro also alleges that, on at least one occasion, "Telebrands contacted a customer of New

Metro and attempted to interfere with New Metro's attempts to sell ANGRY MAMA Products to

the customer." *Id.* ¶ 46. New Metro charges Telebrands with: (1) infringement of New Metro's

ANGRY-MAMA trademarks by selling ANGRY MAMA products in interstate commerce, in

violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *id.* ¶¶ 61-66; (2) infringement

of New Metro's ANGRY-MAMA trade dress, in violation of Section 43(a) of the Lanham Act,

*id.* ¶¶ 67-72; (3) infringement of New Metro's U.S. Copyright Registration No. VA 2-001-024

for marketing and selling products in packaging similar to that used by New Metro and bearing a

logo similar to New Metro's protected Steam Design, in violation of Section 501 of the

Copyright Act of 1976, 17 U.S.C. § 501, *id.* ¶¶ 73-77; (4) unfair competition in interstate

commerce, in violation of Section 43(a) of the Lanham Act, *id.* ¶¶ 78-82; (5) misappropriation of

New Metro's intellectual property, in violation of New Jersey common law, *id.* ¶¶ 83-88; (6)

unfair competition for using New Metro's ANGRY-MAMA trademarks, in violation of N.J.S.A.

56:4-1, *et seq.*, *id.* ¶¶ 89-96; and (7) trademark infringement and unfair competition, in violation

of New Jersey common law. *Id.* ¶¶ 97-101. New Metro also seeks (8) a declaratory judgment that

it has not infringed and is not infringing any valid trademark owned by Telebrands, *id.* ¶¶ 102-

06; (9) a declaratory judgment that New Metro has not infringed and is not infringing any valid

trade dress owned by Telebrands, *id.* ¶¶ 107-11; and (10) a declaratory judgment that New Metro

has not infringed and is not infringing any valid copyright owned by Telebrands. *Id.* ¶¶ 112-17.

New Metro also brings claims (11) opposing Telebrands' federal trademark applications, Ser.

Nos. 86/753767, 86/940,863, 86/940,914, and 86/940,873 on the grounds that Telebrands cannot

demonstrate priority of use, that the marks will cause confusion among consumers within the

NOT FOR PUBLICATION

meaning of 15 U.S.C. § 1052(d), that the applications contain knowingly false statements, and

that Ser. No. 86/753,767 is void *ab initio* because the mark was not used in commerce at the time

the application was filed, *id*. ¶¶ 118-40; and (12) seeking the cancellation of Telebrands' U.S.

Copyright Registration No. VA 1-995-574 on the grounds that Telebrands' application contained

false statements that Telebrands created the design as a "work made for hire," that the design is a

"sculpture," and that the design was "published" in the United States on September 1, 2014. *Id*.

¶¶ 141-65. Among other forms of relief, New Metro seeks statutory, punitive, and treble actual

damages and a judgment permanently enjoining Telebrands from selling ANGRY MAMA

products or any products bearing the ANGRY MAMA name, Steam Design, or trade dress. *Id*. at

42-45.

**VII.    The Parties' motions for a preliminary injunction**

On May 17, 2016, Plaintiff Telebrands filed a motion seeking to preliminarily enjoin

New Metro from infringing Telebrands' alleged ownership of (a) Reg. No. VA 1-995-574, the

copyright that protects the "distinctive sculptural design of the ANGRY MAMA product," and

(b) the common-law word mark "ANGRY MAMA" by manufacturing, importing, exporting,

promoting, marketing, distributing, advertising, offering for sale, or selling ANGRY-MAMA

products or ANGRY-MAMA wipes. ECF No. 12. Defendant-Counterclaimant New Metro filed

a brief in opposition on June 6, 2016, arguing that a preliminary injunction is unwarranted

because (a) Telebrands does not demonstrate it will likely prevail in its copyright or trademark

infringement claims, (b) Telebrands does not demonstrate that it has been irreparably harmed, (c)

the balance of harms in this action favors New Metro, and (d) the public interest would not be

NOT FOR PUBLICATION

served by a preliminary injunction. ECF No. 22. Plaintiff filed a brief in further support of its

motion on June 13, 2016. ECF No. 28.

On June 20, 2016, Defendant-Counterclaimant New Metro filed its own motion seeking

to preliminarily enjoin Telebrands from infringing New Metro's alleged ownership of (a) Reg.

No. VA 2-001-024, the copyright that protects New Metro's ANGRY-MAMA packaging and the

Steam Design, and (b) the common-law ANGRY-MAMA trademarks and trade dress. ECF No.

36. Telebrands filed a brief in opposition on July 18, 2016, arguing that a preliminary injunction

is unwarranted for essentially the same reasons listed by New Metro in its opposition to

Telebrands' motion. ECF No. 64. New Metro filed a brief in further support of its motion on July

25, 2016. ECF No. 67. On October 7, 2016, New Metro filed a letter presenting a "newly-

discovered" series of emails exchanged between Howard Lockeer, a former Daka sales agent,

and Jesse Chow, the Business Development Director of Daka, which New Metro claims proves

that Daka granted it the right to trademark the ANGRY-MAMA name. ECF No. 73.

## STANDARD OF REVIEW

### I.   Motion for a preliminary injunction

Federal Rule of Civil Procedure 65 "empowers courts to grant preliminary injunctions."

*Doe v. Banos*, 713 F. Supp. 2d 404, 410 (D.N.J.) *aff'd*, 416 Fed App'x 185 (3d Cir. 2010).

"Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited

circumstances.'" *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)

(quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427

(3d Cir. 1994). "A plaintiff seeking a preliminary injunction must establish that he is likely to

succeed on the merits, that he is likely to suffer harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Ferring*

NOT FOR PUBLICATION

*Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)

(quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). With regard

to the second prong, "where the relief ordered by the preliminary injunction is mandatory and

will alter the status quo, the party seeking the injunction must meet a higher standard of showing

irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix*

*Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citing *Tom Doherty Associates, Inc.*

*v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2nd Cir. 1995)). "The burden lies with the

[movant] to establish every element in its favor, or the grant of a preliminary injunction is

inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428

F.3d 504, 508 (3d Cir. 2005) (citations omitted).

## DISCUSSION

The Court determines whether either Party has shown that a preliminary injunction is

warranted by demonstrating (1) a likelihood of success on the merits of its claims, (2) that it will

be irreparably harmed if the Court denies its motion, (3) that the "balance of equities" tips in its

favor, and (4) that the injunction is in the public interest.

## I.   THE PARTIES' MOTIONS FOR PRELIMINARY INJUNCTIONS

Telebrands and New Metro have submitted similar, opposing motions for preliminary

injunctions under Fed. R. Civ. P. 65(a). Telebrands seeks to enjoin New Metro from infringing

its alleged copyrights and trademarks in the Telebrands ANGRY MAMA product by selling the

New Metro ANGRY-MAMA product and ANGRY-MAMA wipes. ECF No. 12. New Metro

seeks to enjoin Telebrands from infringing its alleged copyrights, trademarks, and trade dress in

the New Metro ANGRY-MAMA product and packaging by selling the Telebrands ANGRY

MAMA product. ECF No. 12. Both Parties claim (a) that they are likely to succeed on the merits

15

NOT FOR PUBLICATION

of their actions, (b) that they are likely to suffer harm in the absence of preliminary relief, (c) that

the balance of the equities tip in their favor, and (d) that an injunction against the other Party is in

the public interest.

### A. Preliminary Injunction Element One: likelihood of success on the merits

"The first prong of the test for preliminary injunctions requires the [movant] to show that

it will probably prevail at the ultimate trial on the merits." *Opticians Ass'n of America v.*

*Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990); *see also Bennington Foods*

*LLC*, 528 F.3d at 179 (movant must demonstrate a "reasonable probability of eventual success in

the litigation."). "It is not necessary that the moving party's right to a final decision after trial be

wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case

showing a reasonable probability that it will prevail on the merits." *Oburn v. Shapp*, 521 F.2d

142, 1487 (3d Cir. 1975). Because the elements of copyright infringement and trademark

infringement claims are different, the Court will first consider the Parties' copyright

infringement claims and then consider the trademark and trade dress infringement claims.

### 1. The Parties are both likely to prevail on their copyright infringement claims

Although both Parties ultimately seek the exclusive right to sell ANGRY

MAMA/ANGRY-MAMA products in the United States, their copyright infringement claims

involve distinct properties. Telebrands seeks an injunction barring New Metro from infringing its

copyright in the ANGRY MAMA *product* design. ECF No. 12 at 10-13. Telebrands charges

New Metro with infringement of U.S. Copyright Registration No. VA 1-995-574, which protects

the "sculpture" of the ANGRY MAMA product itself, in violation of 17 U.S.C. § 501. ECF No.

1 ¶¶ 56-60. New Metro seeks an injunction barring Telebrands from infringing its copyright in

the ANGRY-MAMA *packaging* design. ECF No. 36 at 25. New Metro charges Telebrands with

NOT FOR PUBLICATION

infringement of U.S. Copyright Registration No. VA 2-00-024, which protects the ANGRY-MAMA packaging, including the Steam Design, in violation of 17 U.S.C. § 501. ECF No. 13 ¶¶ 73-77. Both parties demonstrate that they are reasonably likely to prevail on the merits of their copyright infringement claims.

> **a.  Telebrands demonstrates a likelihood of success in its copyright infringement claim.**

To prove copyright infringement under 17 U.S.C. § 501, a plaintiff must show (1) ownership of a valid copyright, and (2) unauthorized copying of original elements of the plaintiff's work. *Dun & Bradstreet Software Serves. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Telebrands demonstrates a likelihood of success in demonstrating both elements of its copyright infringement claim.

> **i.  Telebrands demonstrates a likelihood of success in showing ownership of a valid copyright.**

Protection under the Copyright Act of 1976 "subsists . . . in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. As discussed, although "a 'copyright,' as a right, vests immediately upon the creation of the work" and "must not be confused with the act of registering that right," *Brownstein*, 742 F.3d at 66, registration with the United States Copyright Office is a is a "precondition to filing a claim" for copyright infringement under the Copyright Act. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). "[C]opyright ownership 'vests initially in the author or authors of the work,'" *Kunkel v. Jasin*, 420 Fed App'x 198, 199 (3d Cir. 2011) (quoting 17 U.S.C. § 201(a)), but "the owner of copyright *or of any exclusive right in the work* may obtain registration of the copyright claim." *Id.* (quoting 17 U.S.C. § 408(a)) (emphasis added). "In any judicial proceedings the certificate of

NOT FOR PUBLICATION

a registration made before or within five years after first publication of the work shall constitute

prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17

U.S.C. § 410.

The Third Circuit has held that "an otherwise valid registration is not jeopardized by

inadvertent, immaterial errors in an application." *Kunkel*, 420 Fed App'x at 199 (citing *Raquel v.*

*Educ. Mgmt. Corp.*, 196 F.3d 171, 177 (3d Cir. 1999), *cert. granted and judgment vacated on*

*other grounds*, 531 U.S. 952 (2000)). "A misstatement is material if it 'might have influenced the

Copyright Office's decision to issue the registration.'" *Id.* (quoting *Raquel*, 196 F.3d at 177).

Telebrands claims that New Metro is infringing a copyright registered as Reg. No. VA 1-

995-574. According to the certificate of registration, this copyright protects a "sculpture" titled

"ANGRY MAMA CHARACTER" that was authored and completed in 2014 by Telebrands

under a "work made for hire" arrangement, and published in the United States on September 1,

2014. ECF No. 1 Ex. A. Because Telebrands claimed and received a certificate of registration for

Reg. No. VA 1-995-574 within five years of the stated first publication of the work, Telebrands

makes a *prima facie* case that it is the owner of a valid copyright in the "ANGRY MAMA

CHARACTER." 17 U.S.C. § 410.

In the context of a motion for preliminary injunction, courts in this district have held that,

once a plaintiff establishes that it is entitled to a "presumption of validity and ownership" of a

copyright, "it is the defendants' burden to come forward with evidence demonstrating

invalidity." *Yamate USA Corp. v. Sugerman*, 1991 WL 274854, at *5 (D.N.J. Mar. 7, 1991).

Although Telebrands makes a *prima facie* case for ownership of a valid copyright, New Metro

argues that Reg. No. VA 1-995-574 is neither valid nor owned by Telebrands because

Telebrands did not "author" the protected work or receive a valid transfer of rights.

18

NOT FOR PUBLICATION

New Metro claims that, even though Telebrands listed itself as the "author" of the "ANGRY MAMA CHARACTER" under a "work made for hire" arrangement in the Reg. No. VA 1-995-574 registration statement, Telebrands did not author the work or hire an author to create the work. ECF No. 22 at 25. "As a general rule, the author is the party who creates the work, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 102). The exception to this rule is the "work made for hire" arrangement noted in the Reg. No. VA 1-995-574 registration statement. "If the work is for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a written agreement to the contrary." *Community for Creative Non-Violence*, 490 U.S. at 737 (quoting 17 U.S.C. § 201(b)).

As New Metro points out, Telebrands alleges in its complaint that, "[a]t least as early as 2014, Telebrands' licensor, Daka Research, Inc., developed and created the ANGRY MAMA product." ECF No. 1 ¶ 9. Telebrands provides no evidence that it, and not Daka, created the ANGRY MAMA product, nor does Telebrands claim or provide any evidence that Daka authored the work for Telebrands in any of 17 U.S.C. § 101's enumerated "for hire" arrangements.

In its reply brief, Telebrands concedes that it did not author the ANGRY MAMA product and states that it "inadvertently and mistakenly identified itself as the author, without deceptive intent and inadvertently omitted an identification that it obtained its rights by virtue of an exclusive license to the product under the copyright in the United States." ECF No. 28 at 10 n.14. Telebrands states that it filed a supplementary registration form with the Copyright Office correcting the registration statement for Reg. No. VA 1-995-574 to identify Daka as the author of

19

NOT FOR PUBLICATION

the work and Telebrands as the "Claimant by written agreement," clarifying that it "obtained exclusive rights to the copyright through a written exclusive license." *See* Supplemental Registration, Decl. Tonia A. Sayour in Supp. P. Mot. Prelim. Injunction ("Sayour Declaration"), ECF No. 29 Ex. 1. A Supplemental Copyright Registration numbered VA 1-436-472 has since been issued. ECF No. 79-1.

The Court finds that Telebrands is reasonably likely to demonstrate that the "inadvertent" misstatement about the ANGRY MAMA's author in the Reg. No. VA 1-995-574 registration statement is immaterial. Again, a "misstatement is material if it 'might have influenced the Copyright Office's decision to issue the registration.'" *Kunkel*, 420 Fed App'x at 199. Although Telebrands is not the author of the copyrighted work, it does claim that it received "exclusive rights" to the work from Daka, the actual author, ECF No. 28 at 10 n.14. Because "the owner . . . of any exclusive right in the work may obtain registration of the copyright claim," *Kunkel*, 420 Fed App'x at 199 (quoting 17 U.S.C. § 408(a)), it is likely that the Copyright Office would still have issued the registration if Telebrands had identified itself and Daka properly in the original registration form.

New Metro also contends that the Court should deny Telebrands' motion because Telebrands has not provided any evidence, other than sworn statements, that Daka did, in fact, assign the exclusive right to the copyrighted ANGRY MAMA work to Telebrands. ECF No. 22 at 26. New Metro argues that, "[w]ithout a signed writing, Telebrands cannot possibly prevail in this action." *Id*. At this point, however, New Metro's question about the sufficiency of Telebrands' evidence does not overcome the "*prima facie* evidence of the validity of the copyright and ownership of the registered work" created by the Reg. No. VA 1-995-574 certificate of registration and the recent supplementary registration form. *Southco, Inc. v.*

NOT FOR PUBLICATION

*Kanebridge Corp.*, 390 F.3d 276, 299 n.18 (3d Cir. 2004). Through these documents, Telebrands demonstrates a likelihood of success in establishing its ownership of a valid copyright at trial.

> **ii.   Telebrands demonstrates a likelihood of success in showing New Metro's "unauthorized copying" of the protected work.**

Telebrands also demonstrates that it is reasonably likely to prove the second element of its copyright infringement claim, unauthorized copying of the protected work. Unauthorized copying may be shown either with evidence of direct copying "or by showing that the defendant had access to the copyrighted work and that the original and allegedly infringing works share substantial similarities." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207-08 (3d Cir. 2005) (citing *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)).

Telebrands is likely to demonstrate at trial that New Metro had access to Daka's copyrighted ANGRY MAMA work. ECF No. 12-1 at 11. New Metro's access to the copyrighted work is not in dispute and is, in fact, central to New Metro's own counterclaims: New Metro admits that it purchased its ANGRY-MAMA products from Daka beginning in March 2015. ECF No. 22-2 ¶¶ 8, 18.

Telebrands is also likely to demonstrate at trial that New Metro's ANGRY-MAMA product and wipes are "substantially similar" to the copyrighted ANGRY MAMA work. Again, Telebrands alleges, and New Metro does not dispute, that New Metro's ANGRY-MAMA product and Telebrands' ANGRY MAMA product are essentially identical, displaying the same body shape and decorations, arm positioning, facial expression, hair style, coloring, and functionality. *See* ECF No. 12 at 11-12. Again, this similarity is central to New Metro's own counterclaims. Telebrands also claims, and New Metro does not dispute, that New Metro's

NOT FOR PUBLICATION

ANGRY-MAMA wipes are similar, featuring a two-dimensional likeness of the "angry woman" ANGRY MAMA work. *Id.* at 12-13.

### iii. New Metro's affirmative defenses do not diminish Telebrands' likelihood of success on its copyright infringement claim.

New Metro raises several, partially related affirmative defenses to Telebrands' copyright infringement claim. None negates Telebrands' likelihood of success in establishing its claim for copyright infringement.

New Metro argues first that Telebrands cannot assert its ownership of a copyright in the design of the ANGRY MAMA because Daka waived its copyright when it allowed New Metro to sell ANGRY-MAMA products in the United States and "repeatedly" told New Metro it had "exclusive rights" and that it could register the ANGRY-MAMA trademarks. ECF No. 22 at 27. However, the affirmative defense of waiver "requires proof of an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Covington Industries, Inc. v. Nichols*, 2004 WL 784825, at *5 (S.D.N.Y. Apr. 12, 2004). New Metro does not provide proof that Daka intentionally relinquished its ownership of the copyright. At most, New Metro offers evidence that Daka originally permitted New Metro to sell ANGRY-MAMA products, then withdrew that permission, *see* ECF No. 22-2 ¶ 25; ECF No. 22-2 Ex. I; promised to grant New Metro the exclusive right to *sell* the products in the United States, but never entered into a written agreement, *see* ECF No. 22-2 Ex. G; Ex. I at 2; and gave New Metro permission to register trademarks, but not a copyright. ECF No. 22-2 Ex. H.

New Metro also argues that the copyright infringement claim is barred under the doctrines of equitable estoppel and acquiescence. Four factors are necessary to establish the affirmative defense of equitable estoppel: "(1) that the plaintiff has actual or constructive notice

22

NOT FOR PUBLICATION

of the defendant's infringing conduct; (2) the plaintiff must intend or expect that defendants will act on the plaintiff's misrepresentations or concealments; (3) the defendant must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury." *Energy Intelligence Group, Inc. v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers Intl. Union, AFL-CIO/CLC*, 2013 WL 4648333, at *13 (W.D. Pa. Aug. 29, 2013) (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960)). "Causation is met 'if there is express consent by the copyright owner or some statement that he does not regard defendant's acts as infringing or that he has no objection to defendant's work." *Id.* (quoting *Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 295 (S.D.N.Y. 1991)). Similarly, the doctrine of acquiescence, at least in the context of trademark infringement, "applies when the trademark owner, by affirmative word or deed, conveys its implied consent to another," then later attempts to bring an action for infringement. *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) (citing 4 McCarthy on Trademarks and Unfair Competition, § 31.51 at 31-76 (4th ed. 1997)).

New Metro argues, essentially, that Telebrands is barred from bringing its copyright infringement claim because Daka initially "knew about and actively encouraged New Metro's sales of ANGRY-MAMA products, which Telebrands now alleges are infringing." ECF No. 22 at 28. Telebrands clarifies, importantly, that it "brings this action only against New Metro's use of 'unauthorized reproductions and copies' of the ANGRY MAMA product, and not against the ANGRY MAMA product New Metro purchased from Daka." ECF No. 28 at 11. In other words, Telebrands does not claim that New Metro infringed the copyright protected by Reg. No. VA 1-995-574 in 2015, when Daka manufactured ANGRY-MAMA products for New Metro to sell. Instead, Telebrands claims that New Metro began infringing the copyright only after Daka

NOT FOR PUBLICATION

assigned the rights in the work to Telebrands and New Metro found a new manufacturer to produce its ANGRY-MAMA products. *See* ECF No. 12-2 ¶ 10. The doctrines of estoppel and acquiescence do not bar an infringement action based on these later sales.

Finally, New Metro argues that the copyright infringement claim is barred under the doctrine of "unclean hands" because Telebrands "knowingly and falsely identified a 'work made for hire'" in its copyright registration "when that was clearly not the case." ECF No. 22 at 28. As discussed, Telebrands claims this misstatement was "inadvertent," it filed a supplementary registration form with the Copyright Office stating that Daka was the original author of the protected work and that Telebrands received exclusive rights by way of a written agreement, ECF No. 29 Ex. 1, and a supplemental certificate registration correcting the error has been issued, ECF No. 79-1. At trial, New Metro may be able to prove that Telebrands made the misstatements intentionally, but its accusation does not diminish Telebrands' likelihood of success at this point. Telebrands establishes a likelihood of success on the merits of its copyright infringement claim.

### b. New Metro demonstrates a likelihood of success in its copyright infringement claim.

The Court has already discussed New Metro's copyright infringement claim in the context of Telebrands' motion to dismiss. To repeat, New Metro alleges that Telebrands is infringing its copyright interest in the ANGRY-MAMA packaging and Steam Design, protected by Copyright Registration No. VA 2-002-024. ECF No. 36 at 25.

New Metro demonstrates a likelihood of success in establishing the first element of its copyright infringement claim. Because New Metro claimed and received a certificate of registration for Reg. No. VA 2-002-024 within five years of the stated first publication of the

NOT FOR PUBLICATION

work, New Metro makes a *prima facie* case that it is the owner of a valid copyright in the packaging and Steam Design. *See* 17 U.S.C. § 410. Telebrands attempts to rebut this presumption by arguing that the Steam Design is ineligible for copyright protection as a matter of law because it is composed of "mere lettering" and "familiar symbols or designs." ECF No. 64 at 28-29. The Court rejects this argument for the reasons discussed in the motion to dismiss analysis.

New Metro also demonstrates a likelihood of success in establishing the second element of its copyright infringement claim. To repeat, New Metro alleges that the Telebrands ANGRY MAMA "product packaging . . . is substantially similar or identical to New Metro's copyright protected packaging," *see* ECF No. 13 ¶ 75, and specifically says that Telebrands has "included the exact same 'Steam' logo on its packaging" that New Metro does. *Id.* ¶ 38. New Metro alleges that Telebrands "had access to" the packaging and Steam Design, ECF No. 36 at 25, a claim supported by New Metro's earlier entry into the United States market. Telebrands again counters that New Metro fails to "actually show how the registered and allegedly infringing works are substantially similar," ECF No. 64 at 30. New Metro (a) specifically alleges that the "steam logo" on Telebrands' packaging is the "exact same" logo as the Steam Design, ECF No. 13 ¶ 38; (b) incorporates side-by-side photographs of the Parties' product packaging into its complaint, *see id.* ¶ 75; and (c) lists several other alleged similarities between the two boxes, including "placement of the house mark," placement of "images of the product appearing inside a microwave," similar plastic "windows" for viewing the product inside the box, and "[p]rominent use of the background color white," in its opposition to Telebrands' motion. ECF No. 53 at 4. The Court finds that New Metro demonstrates a likelihood of success in establishing (a) that it

NOT FOR PUBLICATION

owns a valid copyright in the packaging and Steam Design and (b) that Telebrands copied these protected elements.

The Court recognizes that finding both Parties are likely to prevail in their copyright infringement claims may seem somewhat contradictory. At trial, it is possible that one Party will overcome the presumption that the other has ownership of a valid copyright and demonstrate that it owns *all* of the ANGRY MAMA/ANGRY-MAMA-related copyrights. Importantly, though, the product sculpture design and the packaging and Steam Design appear to be separate works of authorship created at different times by different authors. The Parties demonstrate a likelihood of establishing, at trial, that each owns the right to a separate piece of the overall "ANGRY MAMA/ANGRY-MAMA package."

### 2. Neither Party demonstrates a likelihood of success in its trademark infringement claims

Unlike the Parties' copyright infringement claims, by which Telebrands and New Metro seek to protect their interests in distinct elements of the ANGRY MAMA/ANGRY-MAMA package, the Parties' trademark infringement claims raise competing interests in the same properties. Telebrands alleges that it acquired sole ownership of the product trade dress, *see* ECF No. 1 ¶ 11, the common law word mark "ANGRY MAMA," *id*. ¶ 14, and the common law "design mark relating to the configuration of the ANGRY MAMA product" from Daka. *Id*. New Metro claims that *it* is the sole owner of the product trade dress, the common law word mark "ANGRY-MAMA," and the common law trademark Steam Design. ECF No. 13 ¶¶ 10-14. Each Party seeks to enjoin the other from infringing its common law trademarks.

"The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion." *Commerce Nat. Ins. Services, Inc. v.*

NOT FOR PUBLICATION

*Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000) (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983)). To establish a claim for trademark infringement under the Lanham Act, a plaintiff must prove that "(1) its mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services." *Id.* (citing *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)); *see also 800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 281-82 (D.N.J. 2006) (noting that Lanham Act trademark infringement and unfair competition claims also require proof that defendant used the mark "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising" of goods and services") (citing 15 U.S.C. § 1125(a); *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir. 1994)). The Court will determine whether either party is reasonably likely to establish the elements of its Lanham Act trademark infringement and unfair competition claims.

### a. The Parties are both likely to establish the validity of their trademarks

Both Parties assert that they own common law trademarks. Although both parties have applied to register their respective word marks with the United States Patent and Trademark Office, *see* ECF No. 13 ¶¶ 48, 50 (Telebrands affiliate Novel Brands LLC filed U.S. Trademark Application Ser. No. 86.753,767 for the word mark "ANGRY MAMA" on September 15, 2015, then recorded an assignment of the trademark rights to Telebrands on January 14, 2016); ECF No. 1 ¶ 24 (New Metro filed U.S. Trademark Application Ser. No. 86.911,026), the applications have not yet been accepted.

NOT FOR PUBLICATION

If a mark is not both federally registered and "incontestable,"[5] a plaintiff must ordinarily

establish the mark's validity by providing "proof of secondary meaning" at the "time and place

that the defendant began to use the mark." *Id.* (citing *Ford Motor Co. v. Summit Motor Prods.*,

930 F.2d 277, 292 (3d Cir. 1991); *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225,

1231 (3d Cir. 1978), *superseded on other grounds as stated in Shire US Inc. v. Barr*

*Laboratories*, 329 F.3d 348 (3d Cir. 2003)). "One exception to the application of the secondary

meaning analysis, in the absence of federal registration and incontestability, is where the mark is

considered inherently distinctive." *Ford Motor Co.*, 930 F.2d at 291-92 n.18 (citing *United States*

*v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981)). "Distinctive marks include those

which are arbitrary, fanciful, or suggestive." *Id.* "Arbitrary marks," in turn, "are those words,

symbols, pictures, etc., which are in common linguistic use but which, when used with the goods

or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those

goods or services." *Id.* (citing 1 McCarthy, Trademarks and Unfair Competition, at §§ 11:3-4 (2d

ed. 1984)) (internal quotations omitted).

The Parties agree, as does the Court, that the ANGRY MAMA/ANGRY-MAMA

trademarks are valid and legally protectable because they are inherently distinctive. *See* ECF No.

12 at 14; ECF No. 36 at 12. As Telebrands explains, "the terms 'ANGRY MAMA' are not

directly related to a microwave steam cleaner product." *Id.* "Angry" and "mama" are both words

in "common linguistic use," but neither describes "any ingredient, quality, or characteristic" of

microwave cleaners. *Ford Motor Co.*, 930 F.2d at 291-92 n.18.

---

[5] Incontestability requires, among other things, that a mark be in "continuous use for five
consecutive years subsequent to registration." *Commerce Nat. Ins. Services, Inc.*, 214 F.3d at 438
n.4. Because the parties agree that the ANGRY MAMA/ANGRY-MAMA word mark was
created in 2014 at the earliest, the mark is not incontestable.

NOT FOR PUBLICATION

**b. The parties are both likely to establish a likelihood of consumer confusion**

The Parties also agree that consumers are likely to be confused by the concurrent use of their ANGRY MAMA/ANGRY-MAMA trademarks. *See* ECF No. 12 at 15-17; ECF No. 36 at 12-13. In determining whether a plaintiff has demonstrated a likelihood of confusion, courts within the Third Circuit evaluate at least ten factors, "[p]erhaps the most important of" which is "the degree of similarity between the two marks." *Ford Motor Co.*, 930 F.2d at 293 (citing *Scott Paper Co.*, 589 F.2d at 1229). In this case, as the Court has discussed, the Parties' word marks, logos, and trade dress are nearly identical, creating a high likelihood of consumer confusion.

**c. Neither Party demonstrates that it is likely to establish ownership of the protected mark**

As New Metro acknowledges, the "central dispute" in both Parties' trademark infringement claims is not whether the trademarks are valid or whether their concurrent use is likely to cause consumer confusion, but which Party owns the trademarks. ECF No. 22 at 10.

As with copyrights, "federal registration of a trademark is prima facie evidence of the mark's validity, the registrant's ownership, and its exclusive right to use the mark in commerce." *Lucent Information Management, Inc. v. Lucent Technologies, Inc.*, 186 F.3d 311, 315 (3d Cir. 1999). If, as here, the trademarks are unregistered, courts examine two factors to determine ownership: "priority of use" and "market penetration." *MNI Management, Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 405 (D.N.J. 2008) (citation omitted). With respect to priority of use, "the first party to adopt a mark can assert ownership so long as it continuously uses the mark in commerce." *Commerce Nat. Ins. Services, Inc.*, 214 F.3d at 438 (quoting *Ford Motor Co.*, 930

29

NOT FOR PUBLICATION

F.2d at 292).[6] The Parties agree that "use in commerce" may be established not only by showing

actual sales of products, but also by showing "pre-sales activity . . . of such a nature and extent as

to create an association in the mind of the consuming public between the mark and the [goods to

be sold]." ECF No. 22 at 11 (quoting *Selfway, Inc. v. Travelers Petroleum, Inc.*, 579 F.2d 75, 79

(C.C.P.A. 1978)); ECF No. 36 at 13 (quoting *Selfway*, 579 F.2d at 79). A party asserting

trademark ownership must also show "'clear entitlement' to protection of a trademark in a

*particular market.*'" *MNI Management, Inc.*, 542 F. Supp. 2d at 405 (quoting *Natural Footwear*

_____

[6] This Court's analysis is not altered by New Metro's claim that Daka was the "mere manufacturer" of the ANGRY-MAMA products for New Metro, ECF No. 22 at 1, or Telebrands' claim that New Metro was the "mere distributor" of ANGRY-MAMA products for Daka. ECF No. 28 at 8. It is true that the "mere fact that a manufacturer who already owns a mark enters into an agreement with a distributor to sell the manufacturer's goods does not, by itself, vest ownership of the mark in the distributor." *Covertech Fabricating, Inc. v. TVM Bldg. Products, Inc.*, 124 F. Supp. 3d 489, 519 (W.D. Pa. 2015) (citing *Doebler's Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 825 (3d Cir. 2006)). "In disputes between a manufacturer and distributor regarding ownership of a mark, courts may first look to contractual expectations," and then to the initial ownership of the mark. *Id.* (citing *Doebler's Pennsylvania Hybrids, Inc.*, 442 F.3d at 826). Because New Metro acknowledges that it "never received any kind of exclusive agreement" with Daka to sell ANGRY-MAMA products in the United States, ECF No. 22-2 Ex. I at 2, there are no "contractual expectations" to analyze. At oral argument, New Metro urged the Court that it could establish ownership of the mark based on *UVeritech, Inc. v. Amax Lighting Inc.*, 115 USPQ2d 1242 (TTAB 2015), which holds where there is no agreement between manufacturer and distributor, the presumption that the manufacturer owns the trademark can be rebutted by looking to several relevant factors: "(1) which party created and first affixed the mark to the product; (2) which party's name appeared with the trademark on packaging and promotional materials; (3) which party maintained the quality and uniformity of the product, including technical changes; (4) which party does the consuming public believe stands behind the product, *e.g.*, to whom customers direct complaints and turn to for correction of defective products; (5) which party paid for advertising; and (6) what a party represents to others about the source or origin of the product." *Id.* at 9. Unlike in *UVeritech* where the distributor was the creator and developer of the product, New Metro only became involved with the ANGRY MAMA product after the product's development by Daka. ECF No. 1 ¶ 9; ECF No. 13 ¶ 23. The record does not currently reflect evidence to conclude that New Metro developed the product to the extent necessary to rebut the presumption. Additionally, given the short time New Metro exclusively distributed and marketed the product, there is insufficient evidence on the record to show other vital factors such as who the consuming public believed stood by the product. *Uveritech*, 115 USPQ2d at 9. Instead, the Court proceeds to analyze "initial ownership" of the mark under the two-part "priority of use" and "market penetration" analysis.

NOT FOR PUBLICATION

*Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1397 (3d Cir. 1985)) (emphasis added). "Market penetration is analyzed under four factors as of the time the junior user first adopted and began using the trademark: (1) volume of sales; (2) positive and negative growth trends in the area; (3) the number of actual customers in relation to the potential number of customers; and (4) the amount of advertising in the area." *Id.* (citing *Natural Footwear Ltd.*, 760 F.2d at 1398-99).

### a. Telebrands is likely to demonstrate that it received any trademarks owned by Daka

Importantly, Telebrands claims that it is "the owner by assignment of all right, title and interest in and to the common law trademarks relating to the ANGRY MAMA product," having been assigned the trademarks by Daka. ECF No. 1 ¶ 14. To prevail on the merits of its trademark infringement claims, Telebrands must demonstrate not only that Daka was the initial owner of the trademarks, but that Telebrands received ownership of or license to the marks.

A party may demonstrate that the owner of a trademark assigned it to the party by providing evidence of an "express written assignment" or "uncontradicted oral testimony of a person in a position to have actual knowledge" of the assignment. *Doebler's Pennsylvania Hybrids*, 442 F.3d at 822 (citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:4 (4th ed. 2005)). Although, as New Metro points out, Telebrands has not provided a copy of its purported assignment agreement with Daka, *see* ECF No. 22 at 12-13, Telebrands does provide a sworn declaration from Jesse Chow of Daka attesting to the assignment's existence, ECF No. 12-3 ¶ 12, and an affidavit from Howard Lockeer in further

31

NOT FOR PUBLICATION

support of the trademark assignment, ECF No. 73. This is enough, at this point, to show a
likelihood of success on the merits.[7]

### b. Neither Party demonstrates that it is likely to show the priority of use necessary to establish ownership of the trademarks

The Parties each attempt to demonstrate priority of use in the United States market.
Telebrands offers three proposed dates when Daka first used the ANGRY MAMA/ANGRY-
MAMA trademarks in the United States: October 16, 2014, when it showed the ANGRY
MAMA/ANGRY-MAMA product to Howard Locker; February 2015, when it listed the product
on its website and invited U.S. customers to attend the International Housewares Show; and
March 7-10, 2015, when it displayed the product and marketing materials at the International
Housewares Show. New Metro claims that it established first use on March 23, 2015, when it
began marketing the product to consumers.

Telebrands claims that Daka began marketing and offering the ANGRY MAMA product
for sale to customers in the United States "[a]t least as early as 2014," pointing to Daka's
October 16, 2014 meeting with Howard Locker regarding the product. ECF No. 12 at 14. New
Metro argues that Daka did not actually use the trademarks at this meeting because it did not
provide Locker with any marketing materials using the name mark, ECF No. 22 at 19, an
assertion that is contradicted by a follow-up email in which Daka provided Locker with a
photograph of the product, marketing materials bearing the "ANGRY MAMA" name, and the
link to a YouTube video advertising the ANGRY MAMA product. ECF No. 12 at 4; ECF No. 28

---

[7] New Metro objects to language in the Chow Declaration describing both a "license" to promote
the ANGRY MAMA product under Daka's "intellectual property rights" and an "assignment" of
Daka's trademarks, arguing that a license and assignment are mutually exclusive. ECF No. 22 at
15. Other intellectual property rights aside, the statements by Telebrands and Mr. Chow about
the "assignment" of the disputed trademarks are consistent.

NOT FOR PUBLICATION

at 4; *see also* ECF No. 30 ¶¶ 3, 4; ECF No. 30 Ex. A (Undated email from Whitney Chow to

Howard Locker, in response to October 16, 2014 email from Howard Locker to Whitney Chow

and Jesse Chow with subject line "Thanks for your time today," including link to ANGRY

MAMA YouTube video, and attaching photograph of ANGRY MAMA product in microwave,

one-page sheet featuring image of product and word mark, and October 16, 2014 meeting

minutes); ECF No. 30 Ex. B (screenshot of YouTube video uploaded September 2014).

New Metro also argues however, that Daka did not establish priority of use in the United

States at the October 2014 meeting because the meeting occurred in Hong Kong, Locker was not

an American consumer, and Locker did not expose any American consumers to the ANGRY

MAMA product in 2014.[8] Although the "purpose of [the] meeting was so that [Locker] could

become familiar with [Daka's] future new products and then try to arrange a manufacturing

contract with a U.S. distributor," ECF No. 22-4 ¶¶ 4-5, the Court agrees with New Metro that

Telebrands is not reasonably likely to establish that Daka used the trademarks in the United

States in 2014.

Telebrands next claims that Daka used the marks in the United States in February 2015,

when it listed the ANGRY MAMA product on its website and sent emails to "approximately 30 .

. . U.S. customers" directing them to the website and inviting them to visit Daka's booth at the

International Housewares Show in Chicago. ECF No. 1 ¶ 14; ECF No. 12-3 ¶ 7; ECF No. 30 ¶ 7;

*see also* ECF No. 30 Ex. E (February 3, 2015 email to redacted recipient with subject line "Spice

---

[8] Again, the Parties dispute whether Locker was a "representative of New Metro," ECF No. 12-3 ¶ 6, or "Daka's own sales agent," ECF No. 22 at 19. Locker identifies himself as the "principal of Lockwin & Associates" and a "sales agent" who worked, on commission, on behalf of Daka to find an American buyer for the ANGRY MAMA product. ECF No. 22-4 ¶ 2. More relevant to this discussion, the Parties agree that Locker was not an American consumer and did not provide American consumers with product samples or marketing materials in 2014.

NOT FOR PUBLICATION

up Your Cooking Experience with us @International Home + Housewares Show 2015 in

Chicago, USA (Booth: S5131, South Hall," featuring graphic with image of ANGRY MAMA

product, but not name mark, and instructions to "Visit our website www.daka.com.hk to view the

well-received inventions"); ECF No. 30 Ex. F (Internet Archive image of www.daka.com.hk, as

accessed on February 14, 2015, featuring image of ANGRY MAMA product and name mark).

New Metro contends that Daka's website "was clearly not intended to promote

housewares to U.S. purchasing consumers," asserting, without any basis, that "no U.S. consumer

ever saw this foreign website." ECF No. 22 at 18 (citing Decl. Bob Trinque in Supp. New Metro

Mot. Prelim. Injunction, ECF No. 36-2 ¶ 9). Given Daka's emails directing American customers

to the website, however, the Court finds that Telebrands is likely to demonstrate that Daka used

the trademarks in the United States in February 2015.

Telebrands also claims that Daka used the ANGRY MAMA/ANGRY-MAMA marks in

the United States between March 7 and 10, 2015, when Daka hosted a booth featuring the

product at the International Housewares Show in Chicago, Illinois. ECF No. 12 at 4. Daka

unquestionably reached at least one U.S. consumer at the Show: New Metro, which began

working with Daka to sell the ANGRY-MAMA product later that month. New Metro claims,

again without any basis, that it was the only company at the International Housewares Show to

"notice" the product, ECF No. 22 at 15-16, and argues that Daka could not establish priority of

use at the Show because its booth included no ANGRY MAMA marketing materials and only a

single prototype of the product, which it "obscured" behind other objects. *Id*. Telebrands,

however, provides evidence that Daka displayed (a) a poster using the ANGRY MAMA word

mark, (b) at least two prototypes of the product, and (c) a one-page sheet featuring an image of

the product and the word mark. *See* ECF No. 30 Ex. C (photographs of Daka booth at

NOT FOR PUBLICATION

International Housewares Show, including photograph of poster with image of ANGRY MAMA product and word mark and photograph of two ANGRY MAMA prototypes on display counter, with stack of marketing materials above them); ECF No. 30 Ex. D (one-page sheet, allegedly distributed at show, featuring image of ANGRY MAMA product and word mark). Again, the Court finds that Telebrands is reasonably likely to demonstrate that Daka used the word mark in the U.S. market between March 7 and 10, 2015.[9]

New Metro claims a later first use of the ANGRY MAMA word mark in the United States market: March 23, 2015, after the International Housewares Show, when New Metro ordered ANGRY-MAMA products from Daka and allegedly began "the heavy pre-sale marketing of its upcoming ANGRY-MAMA products" in the United States by "sending over 200 emails to potential customers offering the ANGRY-MAMA products for sale." ECF No. 22 at 11; *see also* ECF No. 22-2 Ex. A (March 24-26 emails using ANGRY MAMA word mark). New Metro also states that it used the word mark in its first confirmed sale of the ANGRY-MAMA product on April 1, 2015. ECF No. 22 at 11; *see also* ECF No. 22-2 Ex. C at 1, 2 (April 1 and April 10 purchase orders for ANGRY-MAMA products). Although, as Telebrands points out, New Metro had not yet received ANGRY-MAMA products from Daka that it could ship to these potential customers, *see* ECF No. 28 at 7, 7 n.8, the Court finds that New Metro is likely to demonstrate its use of the word mark in the United States market beginning on March 23 or April 1, 2015, making it the junior user of the mark.

---

[9] To the extent New Metro challenges Daka's "continuous use" of the marks, Telebrands claims that Daka sent follow-up emails to customers who had visited the booth at the International Housewares Show, *see* ECF No. 30-3 Ex. G (March 27, 2015 email from Christine Ho of Daka to redacted customer including ANGRY MAMA image, name mark, link to YouTube advertisement, and attached promotional brochure). Additionally, New Metro acknowledges that, after May 2015, Daka began manufacturing the product for additional United States consumers. ECF No. 22 at 5.

NOT FOR PUBLICATION

> **c. Neither Party demonstrates that it is likely to show adequate**
>
> **market penetration to establish ownership of the trademarks**

In order to establish ownership of the ANGRY-MAMA/ANGRY MAMA trademarks, Telebrands must also demonstrate that Daka's market penetration was "significant enough to pose a real likelihood of confusion among the consumers in that area" by the time New Metro "first adopted and began using the trademark." *MNI Management, Inc.*, 542 F. Supp. 2d at 406 (citation omitted). To repeat, the Court gauges market penetration by examining (1) volume of sales; (2) positive and negative growth trends in the area; (3) the number of actual customers in relation to the potential number of customers; and (4) the amount of advertising in the area." *Id.* (citing *Natural Footwear Ltd.*, 760 F.2d at 1398-99).

Based on the evidentiary submissions of both Parties, the factual record is currently too sparse for the Court to find that either Party is likely to establish adequate market penetration. It appears that neither Daka nor New Metro had made any *actual* sales in the United States at the time New Metro first began using the ANGRY MAMA word mark in its advertisements on March 23, 2015. Telebrands provides evidence that Daka was in negotiations to sell the product to New Metro at this point, although it appears that New Metro began advertising the product before it actually finalized its order from Daka. *See* ECF No. H (March 12-13, 2015 email chain with Jesse Chow, Whitney Chow, and Howard Locker discussing ANGRY MAMA product and packaging specifications for Bob Trinque). Daka does not claim to have sold the product to any other United States distributors or consumers at this point.

Neither Telebrands nor New Metro provides any direct evidence of growth trends in the United States market at the time New Metro first began using the word mark (other than that both Daka and New Metro were just beginning to sell the product). Nor does either Party make

NOT FOR PUBLICATION

any claim about the "potential number of customers" for the ANGRY-MAMA/ANGRY MAMA product, preventing the Court from weighing the number of actual consumers reached by Daka's marketing efforts against the number of potential consumers.

Because none of these factors weighs in favor of finding that Daka had established market penetration by the time New Metro began to use the disputed trademarks, Telebrands' claim relies almost exclusively on Daka's marketing efforts in the United States before March 23, 2015. Telebrands points to Daka's YouTube video, February emails to 30 potential customers, promotion of the product at the International Housewares Show, and video coverage of the product at the International Housewares Show by a reporter for the website Women's Forum, *see* ECF No. 30-3 Ex. J (compact disc containing video file of Women's Forum discussion of several Daka products), as evidence that Daka did penetrate the U.S. market. New Metro argues that this amount of promotion was insufficient. New Metro refers to *Future Domain Corp. v. Trantor Sys., Ltd.*, where the Northern District of California found that a plaintiff software company's promotional activities at a trade show, which included distributing 3,500 information fliers and 1,000 corporate brochures, collecting 2,400 inquiry forms, and distributing 200 beta releases of the trademarked program, were not sufficient to "create an association between" the company and the trademark "in the public mind." 27 U.S.P.Q. 2d 1289, 1295 (N.D. Cal. 1993).[10] New Metro is correct that the *Future Domain* plaintiff reached more potential consumers with its marketing efforts than Daka claims to have done. ECF No. 36 at 17.

---

[10] New Metro claims that "advertising alone will not defeat the priority claim of another party, such as New Metro, who actually took purchase orders first." But this Court agrees with *Future Domain Corp.* that, "[i]f a party adopts a mark and uses it in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind, the party may acquire the rights superior to those a subsequent user may acquire through selling goods identified with a similar mark." *Future Domain Corp.*, 27 U.S.P.Q. 2d, 1993 WL 270522, at *6 (internal quotation marks omitted).

NOT FOR PUBLICATION

This Court is not persuaded by New Metro's comparison. *Future Domain* involved two competing software companies who both marketed similar products bearing the same name at the same trade show. That court found it "determinative" that the defendant software company had *also* marketed its product at the trade show, preventing the plaintiff company from creating an association in the public's mind between the mark and the plaintiff only *Future Domain Corp.*, 27 U.S.P.Q. 2d, 1993 WL 270522, at *8. In contrast, New Metro did not market the ANGRY-MAMA product at the International Housewares Show. The record instead indicates that New Metro was a potential customer, and that Daka's promotion of the product led to its sale of the product to New Metro.

More importantly, the *Future Domain* court emphasized that the absolute number of potential consumers reached by the plaintiff's marketing efforts was not a "determinative" factor in its analysis because the record did "not ma[k]e clear what proportion of the market" for the trademarked product attended the trade show. *Id.* at *7. Similarly, as discussed, the Parties here have not established the "potential number of consumers" for the ANGRY MAMA/ANGRY-MAMA product or the number of potential consumers who attended the International Housewares Show. Without these factors of comparison, the absolute number of potential customers Daka reached is of little significance.

The Court does not find, as New Metro argues it should, that Telebrands is likely to *fail* on the merits of its trademark infringement claim. Without a more robust factual record, however, the Court can only find now that Telebrands is likely to demonstrate that Daka had engaged in *some* marketing using the disputed trademarks by the time New Metro began using the trademarks in the same market. This is not enough to show a likelihood of success on the merits of the market penetration element of Telebrands' trademark infringement claims.

NOT FOR PUBLICATION

For similar reasons, even if the Court were to find that New Metro's March 23, 2015 date of first use of the trademarks made it the senior user, New Metro has not shown that it is likely to succeed on the merits of the market penetration element of its trademark infringement claim. New Metro, like, Telebrands, relies on evidence of its marketing efforts, pointing to the 200 emails it sent to potential customers on March 23, 2015. *See* ECF No. 22 at 11. Again, without evidence of the size of the potential market, this number has limited significance.

Given the limited factual record and many disputed issues, neither Party has demonstrated that it is likely to prevail on the merits of its trademark infringement claims.

### B. Preliminary Injunction Element Two: Irreparable Harm

Both Parties have demonstrated a likelihood of success on the merits of their copyright infringement claims, and neither has demonstrated a likelihood of success on its trademark infringement claims. To receive a preliminary injunction on their copyright claims, the Parties must also show that they will suffer "irreparable harm" absent an injunction. "Irreparable harm" is harm "of a peculiar nature, so that compensation in money alone cannot atone for it." *Opticians Ass'n of America*, 920 F.2d at 195. "Grounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Id.* (citation omitted). Although a *prima facie* case for copyright infringement, alone, does not create a presumption of irreparable injury, *see Broadcase Music, Inc. v. Publick House Partners, LLC*, 2015 WL 3396804, at *4 (D.N.J. May 26, 2015) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-94 (2006)), "irreparable harm may be based on past and future infringement" if a plaintiff can "demonstrate a threat of future infringement 'beyond mere conclusory allegations.'" *TD Bank, N.A. v. Hill*, 2015 WL 4523570, at *22 (D.N.J. Jul. 27, 2015) (quoting *Brighton Collectibles, Inc. v. Pedre Watch Co.*, 2013 WL 5719071, at *4 (S.D. Cal. Oct. 21, 2013)).

NOT FOR PUBLICATION

Both Parties claim that they will suffer irreparable harm absent a preliminary injunction, and the Court agrees. Because both Parties state their clear intent to continue selling their potentially infringing ANGRY MAMA/ANGRY-MAMA products, the Parties have demonstrated a threat of future infringement – with the attendant loss of control of reputation, trade, and good will – that is far more than a "conclusory allegation."

### C. Preliminary Injunction Element Three: the Balance of the Equities

Each moving Party must also demonstrate that, if the Court were to grant a preliminary injunction, the balance of hardships would weigh in its favor. *Opticians Ass'n of America*, 920 F.2d at 197. Neither Party can do so.

"A basic purpose behind the balancing analysis is to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." *Id.* Here, the harm to each potentially infringing Party would be at least as great as the benefit to each moving Party. To repeat, Telebrands and New Metro sell nearly identical products with nearly identical names and trade dress in similar packaging with nearly identical Steam Design logos. Telebrands seeks to preliminarily enjoin New Metro from infringing its copyright in the product design. New Metro seeks to preliminarily enjoin Telebrands from infringing its copyright in the packaging and Steam Design logo. Both Parties have potentially valid claims for trademark infringement.

At this stage, denying Telebrands' injunction would likely cause Telebrands economic harm and irreparable reputational harm, but granting the injunction and enjoining New Metro from selling ANGRY-MAMA products using the copyrighted product design would likely cause economic harm to New Metro and prevent New Metro from exercising its potentially valid ownership of the ANGRY-MAMA trademarks, also causing potentially irreparable harm.

NOT FOR PUBLICATION

Similarly, denying New Metro's injunction would likely cause New Metro economic and irreparable reputational harm, but enjoining Telebrands from selling ANGRY MAMA products using the copyrighted packaging and Steam Design would likely cause Telebrands economic harm and prevent Telebrands from exercising its potentially valid ownership of the ANGRY-MAMA trademarks, again causing potentially irreparable harm. Granting *both* preliminary injunctions would prevent either Party from selling the ANGRY-MAMA/ANGRY MAMA products, canceling out the benefit to each Party and resulting in harm to both of them.

### D. Preliminary Injunction Element Four: the Public Interest

The public interest, the final factor in the Court's consideration, is related to the balance of harms here. Although "[c]ourts in this jurisdiction have long recognized that the public interest is served by upholding and protecting valid copyrights," *F.A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 516 (E.D. Pa. 2005) (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983)), the public also has a right "not to be deceived or confused" by trademark infringement. *Opticians Ass'n of America*, 920 F.2d at 197. Because the Parties raise nearly identical, opposing trademark infringement claims, granting either of the proposed preliminary injunctions against copyright infringement would potentially interfere with the public's interest in the enforcement of valid trademarks. Granting both preliminary injunctions, of course, would also weigh against the public interest: instead of two products on the market, consumers would now have none.

Ultimately, there are simply too many contradictory assertions and facts in dispute for the Court to grant either preliminary injunction at this time. Both Parties make compelling claims regarding their rights to the overall "ANGRY-MAMA/ANGRY MAMA package." Granting a preliminary injunction to either Party based on claims to *some* of these rights would interfere

41

NOT FOR PUBLICATION

with the other Party's potentially valid exercise of *other* rights. Granting a preliminary injunction to both Parties would benefit no one and harm everyone, including consumers. The Court will not enjoin either Party's activities until it has a full factual record on which to make its final copyright and trademark determinations.

### CONCLUSION

The cross-motions for a preliminary injunction are denied. An appropriate order follows.

DATE: *20 November 2016*

William H. Walls
Senior United States District Court Judge